Louise B. SMITH, et al., Plaintiffs,

v.

Bruce BABBITT, et al., Defendants.

Civ. No. 3–94–1435.

United States District Court,
D. Minnesota,
Third Division.

Feb. 17, 1995.

**1356**

James H. Cohen, Cohen Law Office, Santa Fe, NM, and Leslie L. Lienemann, Stingley Law Office, Minneapolis, MN, for plaintiffs.

Robert M. Small, Asst. U.S. Atty., Minneapolis, MN, for defendants Bruce Babbitt, Denise Homer and Harold Monteau.

Richard A. Duncan and Jerry W. Snider, Faegre & Benson, Minneapolis, MN, and Kurt Van BlueDog and Vanya Hogen–Kind, BlueDog Law Office, Bloomington, MN, for defendants Shakopee Mdewakanton Sioux Community, Shakopee Mdewakanton Sioux Community Business Council, Stanley R. Crooks, Kenneth Anderson, and Darlene McNeal.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction (Doc. No. 3) and Defendants Shakopee Mdewakanton Sioux (Dakota) Community (the "Community"), Shakopee Mdewakanton Sioux (Dakota) Community Business Council (the "Business Council"), Stanley R. Crooks, Kenneth Anderson, and Darlene McNeal's Motion to Dismiss (Doc. No. 9). Plaintiffs commenced this action alleging violations of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301–1303, the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 461–479, the Racketeering and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and the Community's Constitution. The Community operates a tribal gaming facility and distributes proceeds from this facility to Community members on a per capita basis. Plaintiffs' claims arise out of the Community's membership determinations. Plaintiffs claim that proceeds and other membership benefits have been unlawfully given to individuals who are not qualified members of the Community, and unlawfully withheld from individuals who are qualified members of the Community.

### Background

#### I. Parties

Plaintiffs are a group of individuals who claim to be "constitutionally qualified" members of the Community. (Amend.Compl. ¶ 12.) Several of the named Plaintiffs are currently enrolled as members of the Community, with full membership privileges, while others have been either denied membership or have had their membership applications "postponed indefinitely." (*Id.*) Plaintiffs commenced this action in their individual capacities and "as representative of the class of constitutionally qualified members who collectively constitute the sole legitimate governing body of the Community." (*Id.*)

Defendant Bruce Babbitt is the United States Secretary of the Interior. He is named in his official capacity.

Defendant Denise Homer is the acting Area Director of the Minneapolis Area Office of the Bureau of Indian Affairs ("BIA"). She is named in her official capacity.

Defendant Harold Monteau is the Chair of the National Indian Gaming Commission ("NIGC"). The NIGC is an agency within the Department of the Interior created to monitor gaming conducted on Indian lands.

25 U.S.C. § 2706. He is named in his official capacity.[1]

Defendant Community is a federally recognized Indian tribe. The Community conducts gaming at a casino located on federal trust land near Prior Lake, Minnesota.

Defendant Business Council is an executive body consisting of a Chairperson, Vice Chairperson, and Secretary–Treasurer. The Business Council acts on behalf of the Community and performs such duties which may be delegated to it by the General Council of the Community. The General Council was established pursuant to 25 U.S.C. § 476 as the governing body of the Community. (*See* Amend.Compl. Ex. A.)

Defendant Stanley R. Crooks is the Chairperson of the Business Council, Defendant Kenneth Anderson is the Vice Chairperson of the Business Council, and Defendant Darlene McNeal is the Secretary–Treasurer of the Business Council. They are named in their official and individual capacities.[2]

## II. Factual background

### A. Membership

Plaintiffs' claims are based on tribal membership criteria set out in the Community's Constitution. The Community Constitution was adopted in 1969 pursuant to Section 16 of the IRA, 25 U.S.C. § 476. Article II, Section 1 of this Constitution defines the "members" of the Community as (1) those members whose names appeared on the 1969 census roll of residents of the Mdewakanton Sioux Prior Lake Reservation; (2) all children of at least one-fourth (¼) degree Mdewakanton Sioux Indian blood born to an enrolled member of the Community; and (3) all descendants of at least one-fourth (¼) degree Mdewakanton Sioux Indian blood who can trace their blood relationship to Mdewakanton Sioux Indians who resided in Minnesota on May 20, 1886, provided they are found qualified by the Community's governing body and are not enrolled as members in another tribe or band of Indians. (Amend.Compl.

Ex. A, art. II.) Article II, Section 2 of the Constitution provides that the Community's governing body may pass resolutions governing future membership, adoptions, and loss of membership "subject to the approval of the Secretary of the Interior." (*Id.*) Plaintiffs contend that 180 of the Community's purported 225 members fail to meet the Community's constitutional requirements for membership, and that other individuals who meet the constitutional membership requirements have been wrongfully prevented from being enrolled as members. (Amend.Compl. ¶ 2.)

The Community has enacted several ordinances relating to gaming proceed distributions to individuals who allegedly do not meet the Community's constitutional membership requirements. On December 29, 1988, the General Council passed an ordinance entitled "Business Proceeds Distribution Ordinance," No. 12–29–99–002. (*Id.*, Ex. B.) This ordinance authorized non-members of the tribe to receive proceeds from the Community's businesses. (*Id.*) On April 30, 1990, the General Council passed a resolution entitled "Confirming Present Voting Membership," No. 4–30–90–006. (*Id.* Ex. F.) This resolution purportedly "confirmed" the membership and voting rights of persons whom Plaintiffs claim are not constitutionally qualified members of the Community. (*Id.* ¶ 43.)

On October 27, 1993, the General Council passed an ordinance entitled "Gaming Revenue Allocation Amendments to Business Proceeds Distribution Ordinance," No. 10–27–003. (*Id.* Ex. I.) This ordinance purported to amend the December 29, 1988 Business Proceeds Distribution Ordinance in order to comply with the requirements of IGRA, 25 U.S.C. § 2710(b)(3). (*Id.* at 1.) Specifically, this ordinance prohibited gaming proceed distributions to "non-members" of the Community. (*Id.*) According to Plaintiffs, this ordinance does not comport with IGRA and continues to permit non-members of the Community to illegally share in the net revenues of the Community's gaming facility. (*Id.* ¶ 49.)

---

1. The Court will refer to Defendants Bruce Babbitt, Denise Homer and Harold Monteau collectively as "the Federal Defendants."

2. Except where otherwise noted, the Court will refer to the Community, Business Council, Stanley Crooks, Kenneth Anderson and Darlene McNeal collectively as "the Community Defendants."

Following its enactment, the General Council submitted the Gaming Revenue Allocation Amendments to Business Proceeds Distribution Ordinance to the Acting Area Director for the Minneapolis Area office of the BIA for approval. On November 12, 1993, the BIA Area Director approved this ordinance. (*Id.* Ex. L.) On December 20, 1993, several of the Plaintiffs named in this action appealed the Area Director's approval to the Interior Board of Indian Appeals. (Federal Defs.' Ex. A.) The Board of Indian Appeals determined that the Plaintiffs did not have standing to contest the BIA's approval of the Community's gaming ordinance and accordingly dismissed the Plaintiffs' appeal. *Feezor v. Acting Minneapolis Area Director*, IBIA 94–36–A, 25 IBIA 296 (April 28, 1994) (Federal Defs' Ex. B).

On October 27, 1993, the General Council also enacted an "Adoption Ordinance," No. 10–27–93–001. This ordinance purportedly permitted individuals to become members of the Community without meeting the blood quantum requirement. The BIA Area Director disapproved that ordinance on November 12, 1993. On November 30, 1993, the General Council replaced the October 27, 1993 "Adoption Ordinance" with a second ordinance, also entitled "Adoption Ordinance," No. 11–30–93–002. The BIA Area Director disapproved this ordinance on December 13, 1993. (Amend.Compl. Ex. M.) The Community filed an appeal from the Area Director's disapproval, (Federal Defs.' Ex. C); this appeal is pending. According to the Federal Defendants, if the Community is successful on appeal, the Plaintiffs' allegations regarding ineligibility for those persons who are less than ¼ Mdewakanton blood "will become moot." (Federal Defs.' Mem. in Opp. to Pls.' Mot. for Prelim. Inj. at 8.)

### B. Tribal Court Proceedings

On February 17, 1994, the Plaintiffs filed a complaint in the Community's tribal court alleging, *inter alia*, that the Community Defendants unlawfully distributed proceeds from the Community's gaming facility to individuals who are not qualified members of the Community, and unlawfully withheld proceeds from individuals who are qualified

members. (Amend.Compl.Ex.T.) Plaintiffs accordingly asserted claims alleging violations of IGRA, IRA, and the Community Constitution. (*Id.*) Plaintiffs moved for a preliminary injunction seeking to prohibit all individuals who did not meet the constitutional criteria for membership from participating in General Council meetings and from receiving per capita distributions of tribal gaming revenues. (Amend.Compl. ¶ 68.) The tribal court initially granted Plaintiffs' motion with respect to 31 individuals. However, on July 8, 1994, the tribal court dissolved that injunction and denied the Plaintiffs' motion. (*Id.* Ex. HH; ¶ 71.) On March 30, 1994, Plaintiffs appealed the tribal court's ruling on its motion to the Community's Court of Appeals. (Hogen–Kind Aff., Ex. A–3.) The Court of Appeals heard Plaintiffs' appeal on October 3, 1994, and has not yet rendered a decision. (Amend.Compl.Ex.Y.) Thus Plaintiffs' tribal court motion and complaint remain pending within the Community's tribal court system.

### C. Federal Court Proceedings

On November 3, 1994, Plaintiffs commenced the present action against Defendants and moved for a preliminary injunction. On November 23, 1994, the Community Defendants moved to dismiss the Plaintiffs' Complaint. On January 3, 1995, Plaintiffs filed an Amended Complaint adding Defendant Harold Monteau as a Federal Defendant. A hearing on both the Plaintiffs' Motion for a Preliminary Injunction and the Community Defendants' Motion to Dismiss was held before this Court on January 20, 1995.

### Discussion

### I. Community Defendant's Motion to Dismiss

The Community Defendants have moved to dismiss Plaintiffs' claims against them, contending that (1) the Court lacks subject matter jurisdiction over these claims, (2) these claims fail to state a claim upon which relief can be granted, (3) Plaintiffs have failed to exhaust their tribal court remedies, (4) the Court lacks personal jurisdiction over the Community Defendants, and (5) Plaintiffs have not joined the Community members and the Enrollment Committee and thus have

failed to join necessary parties under Rule 19 of the Federal Rules of Civil Procedure.

### A. Subject Matter Jurisdiction

■ The Community Defendants have moved for dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. There are two types of challenges to subject matter jurisdiction which may be made under Rule 12(b)(1): (1) a facial attack; or (2) a factual attack. In a facial attack, the Court restricts itself to "the face of the pleadings," and the nonmovant receives the same protections as it would defending against a motion brought under Rule 12(b)(6). *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990). In a factual attack, the Court considers matters outside the pleadings, the non-moving party does not have the benefit of Rule 12(b)(6) safeguards, and no presumptive truthfulness applies to the factual allegations. *Dou Yee Enter. PTE, Ltd. v. Advantek, Inc.*, 149 F.R.D. 185, 187 (D.Minn.1993); *Osborn*, 918 F.2d at 729 n. 6; *Ohio Nat'l Life Ins. Corp. v. United States*, 922 F.2d 320 (6th Cir.1990).

■ A Rule 12(b)(1) motion to dismiss is a "factual attack" when the truth of the jurisdictional facts alleged by the plaintiff are challenged. *See* 2A Moore's Federal Practice, ¶ 12.07[2.–1] at 12–52. (2nd ed. 1994). In this case, the Community Defendants have challenged the jurisdictional facts alleged by the Plaintiffs, claiming that they are immune from suit based on the doctrine of tribal sovereign immunity. The issue of sovereign immunity is "jurisdictional in nature" and must be resolved "irrespective of the merits" of the underlying action. *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir.1989). The Court will accordingly consider materials "outside the pleadings" to the extent those materials are necessary to determine whether it has subject matter jurisdiction over the claims asserted against the Community Defendants.

### B. Sovereign Immunity

■ The doctrine of tribal sovereign immunity is well established. Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244 (8th Cir.1995); *Weeks Constr., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670 (8th Cir.1986); *see also Three Affiliated Tribes v. Wold Engineering, P.C.*, 476 U.S. 877, 890, 106 S.Ct. 2305, 2313, 90 L.Ed.2d 881 (1986) (recognizing that "[t]he common law sovereign immunity possessed by the Tribe is a necessary corollary to Indian sovereignty and self-governance"). This immunity from suit is based on the view that Indian tribes are "distinct, independent political communities" with inherent powers of a limited sovereignty which have never been extinguished. *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677; *United States v. Wheeler*, 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978). Tribal sovereign immunity is not, however, absolute. It may be waived by the tribe or by Congress. In considering whether tribal sovereign immunity has been waived, courts employ a "strong presumption" in favor of tribal sovereign immunity. *Sycuan Band of Mission Indians*, 884 F.2d at 418. Accordingly, a waiver of tribal sovereignty may not be implied, but must be "unequivocally expressed" by either the tribe or by Congress. *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677; *Rupp*, 45 F.3d at 1245.

### 1. IGRA

■ Plaintiffs claim that by participating in gaming regulated under IGRA, the Community Defendants waived their immunity for federal enforcement of IGRA's requirements. The provision of IGRA at issue in this case is Section 11, which provides in pertinent part:

(3) Net revenues from any class II gaming activities conducted or licensed by any Indian tribe may be used to make per capita payments to members of the Indian tribe only if—

(A) the Indian tribe has prepared a plan to allocate revenues to uses authorized by paragraph (2)(B);

(B) the plan is approved by the Secretary as adequate.

.    .    .    .    .

25 U.S.C. § 2710(b)(3). The uses authorized by paragraph (2)(B) are:

(i) to fund tribal government operations or programs;

(ii) to provide for the general welfare of the Indian tribe *and its members;*

(iii) to promote tribal economic development;

(iv) to donate to charitable organizations; or

(v) to help fund operations of local government agencies.

*Id.* § 2710(b)(2)(B) (emphasis added). Plaintiffs argue that the Community and the Business Council violated § 2710(b)(2)(B) by distributing per capita payments to individuals who are not "constitutionally qualified" members of the Community, and by withholding per capita payments from individuals who are "constitutionally qualified" members of the Community.

Plaintiffs rely on two recent cases which held that by engaging in gaming, a tribe waives its immunity for the purpose of determining whether it has complied with IGRA's requirements. *Maxam v. Lower Sioux Indian Community of Minnesota,* 829 F.Supp. 277, 281 (D.Minn.1993); *Ross v. Flandreau Santee Sioux Tribe,* 809 F.Supp. 738, 744–45 (D.S.D.1992). In both *Maxam* and *Ross,* the tribe operated a gaming facility without having an approved plan under which the tribe was to distribute gaming proceeds as required by IGRA. These Courts accordingly found that federal courts had jurisdiction to enjoin further per capita distributions of gaming proceeds until the Secretary approved a gaming revenue allocation plan as required under § 2710(b)(3).

In this case, the Plaintiffs seek to extend the scope of the waivers found in *Maxam* and *Ross.* Unlike the tribes in *Maxam* and *Ross,* the Community has a distribution plan which was submitted to the Secretary and has been approved as adequate. (Amend. Compl. ¶¶ 4, 50.) Several of the Plaintiffs in this action appealed the initial approval of the plan to the Interior Board of Indian Appeals, raising essentially the same membership issues as raised in this action and in tribal court. (*Id.* Ex. J.) That appeal was denied. *See Feezor v. Acting Minneapolis Area Director,* 25 IBIA 298 (April 28, 1994) (holding that the Plaintiffs lacked standing to contest BIA action based on their "personal assessment of what is or is not in the best interests of the tribe," and that the tribal court was the proper forum for resolving Plaintiffs' membership disputes). The Community's distribution plan limits per capita payments to "members" of the Community, (Amend.Compl.Ex. I § 14.1), and does not otherwise authorize expenditures prohibited under IGRA. Thus the Community has complied with IGRA's requirements. Notwithstanding this fact, the Plaintiffs contend that this Court has jurisdiction to determine which individuals are "constitutionally qualified members" entitled to receive gaming proceeds and other membership benefits.

*This is an internal tribal membership dispute.* It is not a dispute over compliance with IGRA, and does not belong in federal court. Congress did not define "member" when it enacted IGRA, nor would federally imposed criteria be consonant with federal Indian policy. The great weight of authority holds that tribes have exclusive authority to determine membership issues.[3] *See Martinez v. Southern Ute Tribe,* 249 F.2d 915, 920 (10th Cir.1957), *cert. denied,* 357 U.S. 924, 78 S.Ct. 1374, 2 L.Ed.2d 1376 (1958) ("[t]he Courts have consistently recognized

---

**3.** In fact, the revenue allocation plan approved by the Secretary as adequate specifically provides that "[t]he decision as to those persons entitled to share in Community gaming profits is strictly an internal Tribal matter and an inherent right and power of the Tribe." (Amend. Compl.Ex. I, § 14.5, pt. A.) The plan also provides that "[i]n the event any applicant is denied eligibility to receive per capita payments, such individual may bring an action in the Judicial Court of the Shakopee Mdewakanton Sioux Community to seek review of such determination. A final decision of the Tribal Court shall be binding." (*Id.,* pt. B.) Moreover, the Community's Constitution itself provides that "[t]he governing body shall have power to pass resolutions or ordinances, subject to the approval of the Secretary of the Interior, governing future membership, adoptions and loss of membership." (*Id.,* Ex. A, art. II.)

that in the absence of express legislation by Congress to the contrary, a tribe has complete authority to determine all questions of its own membership as a political entity"); *see also Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 1684 n. 32, 56 L.Ed.2d 106 (1978) (holding that federal courts lacked jurisdiction to determine whether a tribe's membership requirements violated ICRA, and noting that "a tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community"). A sovereign tribe's ability to determine its own membership lies at the very core of tribal self-determination; indeed, there is perhaps no greater intrusion upon tribal sovereignty than for a federal court to interfere with a sovereign tribes' membership determinations.

Moreover, adjudicating the Plaintiffs' claims would require the Court to interpret the Community's membership criteria as set out in the Community Constitution and other organic documents. Plaintiffs accordingly must argue that by participating in gaming under IGRA, the Community waived its sovereign immunity with respect to interpreting its constitutional requirements for membership. This is a significant extension of the federal jurisdiction permitted in *Maxam* and *Ross.* These cases found a waiver to consider whether a tribe has complied with IGRA's plan approval requirements, not whether the tribe has complied with its own laws. Assuming *arguendo* that the Community implicitly waived its immunity for determining whether it has satisfied IGRA's requirements, there is no indication the Community waived its immunity to allow a federal court to interpret its membership requirements.[4]

Indeed, this would run contrary to explicit purpose of IGRA. *See* 25 U.S.C. § 2702 (stating that the purpose of IGRA is, *inter alia,* "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments.") Furthermore, the Eighth Circuit has specifically recognized that resolution of disputes "involving questions of [a] tribal constitution and tribal law is not within the jurisdiction of the district court." *Runs After v. United States,* 766 F.2d 347, 352 (8th Cir.1985) (citing cases).

During argument, the Plaintiffs assured the Court that it need not determine Community membership in order to resolve their claims. This assurance is hollow. In fact, in summarizing the Court's role in this case, the Plaintiffs themselves assert that "this court must determine, from the Tribe's own constitution, its admissions and from the records generated by the Tribe, whether payments of gaming revenues have been made to non-members." (Pls.' Mem. in Opp. to Mot. to Dismiss at 28–29.) Notwithstanding Plaintiffs' assurances, the Court manifestly cannot determine whether revenues or any other benefits have been given to "non-members" or withheld from bona fide "members" without first determining who the "members" are.

The Community has decided which individuals are members entitled to receive distributions of gaming proceeds and other benefits, and the Court does not have jurisdiction to disrupt that judgment. Plaintiffs originally brought their claims before the Community's tribal court, and that is where they should be resolved. As a result, the Court finds that Plaintiffs' claims against the Community and

---

4. Notwithstanding the decisions in *Maxam* and *Ross,* the standard the Supreme Court has established for a waiver of tribal sovereignty is extremely difficult to satisfy. In *Santa Clara Pueblo v. Martinez,* the Court stated that "[i]t is settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" 436 U.S. 49, 58, 98 S.Ct. 1670, 1677 (1978) (citations omitted). In fact, within the last month the Eighth Circuit has reaffirmed this exacting standard. *Rupp v. Omaha Indian Tribe,* 45 F.3d 1241, —— (8th Cir.1995) ("[a] waiver of

[tribal] sovereign immunity may not be implied, but must be unequivocally expressed"). The most recent case to consider federal court jurisdiction for alleged violations of IGRA explicitly rejected *Maxam* and *Ross. Davids v. Coyhis,* 869 F.Supp. 1401 (E.D.Wis.1994). Citing the standard set out in *Santa Clara Pueblo,* the *Davids* court held that tribal members' claims for declaratory and injunctive relief for alleged violations of IGRA were barred by the doctrine of sovereign immunity.

the Business Council[5] for alleged violation of IGRA are barred by the doctrine of tribal sovereign immunity.

### 2. ICRA

■ Although the Plaintiffs have focused primarily on whether the Community and the Business Council violated IGRA, the Plaintiffs also allege that the Business Council deprived the Community members of equal protection and due process rights guaranteed under ICRA. (Amend.Compl. ¶¶ 139–142.)

■ Plaintiffs' ICRA claims are clearly barred by the doctrine of sovereign immunity. Federal courts do not have jurisdiction to hear disputes between an Indian tribe and its members alleging violations of ICRA. *Runs After v. United States,* 766 F.2d 347, 353 (8th Cir.1985). The only relief available under ICRA is a writ of habeas corpus, *id.; Ross v. Flandreau Santee Sioux Tribe,* 809 F.Supp. 738, 744, 745 (D.S.D.1992), and federal courts accordingly have no jurisdiction to issue an injunction or award monetary damages for any other ICRA claims. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 72, 98 S.Ct. 1670, 1684, 56 L.Ed.2d 106 (1978); *United States v. Turtle Mountain Housing Auth.,* 816 F.2d 1273, 1275–76 (8th Cir.1987).

### 3. Community Constitution

■ In Count Three of their Amended Complaint, Plaintiffs allege several claims against the Business Council[6] based on the Community Constitution. Federal courts do not have jurisdiction to resolve tribal law disputes. *Runs After v. United States,* 766 F.2d 347, 352 (8th Cir.1985) (holding that "disputes involving questions of interpreta-tion of [a] tribal constitution and tribal law is not within the jurisdiction of the district court") (citing cases). These disputes are within the exclusive jurisdiction of the Community's tribal court. Moreover, even if the Court were permitted to interpret the Community Constitution, the Plaintiffs have not demonstrated the Community waived its sovereign immunity to permit a federal court to enforce any claims based upon that interpretation against it or its subdivisions. The Community Constitution itself does not provide such a waiver, and it may not be implied. (*See* Amend.Compl. Ex. A.) As a result, the Business Council may not be sued in federal court for alleged violations of the Community Constitution.

### 4. IRA

■ In Count Four of their Amended Complaint, the Plaintiffs allege that the Community and the Business Council, through their membership determinations, election procedures, and attempts to amend the Community Constitution, deprived rights purportedly guaranteed to the Plaintiffs under IRA. IRA does not contain a provision conferring federal courts with jurisdiction to hear a private cause of action against an Indian tribe or its officials for IRA "violations." IRA has no language which abrogates a tribe's immunity from suit, and Plaintiffs have not demonstrated that the Community waived its immunity in this regard.

The Eighth Circuit has explicitly rejected claims brought against an Indian tribe predicated on IRA. *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529 (8th Cir.1967); *accord Boe v. Fort Belknap Indian Community,* 642 F.2d 276,

---

**5.** The Business Council is an arm of the Community's government. It was established as a governing body of the Community in the Community's Constitution. (Amend.Compl. Ex. A, art. III.) Its members are elected by the Community, and it "performs such duties as may be delegated from and authorized by the General Council of the Community." (Amend.Compl. ¶ 17; Ex. A, arts. III–V.) Accordingly, the Community's sovereign immunity extends to the Business Council. *See Weeks Constr., Inc. v. Oglala Sioux Housing Auth.,* 797 F.2d 668, 670–71 (8th Cir.1986) (explaining that "[a]s an arm of tribal government, a tribal housing authority possesses attributes of tribal sovereignty" and thus suits against the housing authority were barred absent a waiver of sovereign immunity).

**6.** In Count Three of their Amended Complaint, the Plaintiffs also allege that "[c]ontrary to the Community Constitution, the Department of the Interior and the BIA have breached their trust responsibilities to the Tribe." (Amend.Compl. ¶ 138.) However, the Community Constitution does not *create* a federal trust relationship. A federal trust relationship arises by operation of federal law, not tribal law. Thus the Community Constitution does not create a federal cause of action for breach of fiduciary duty.

279 (9th Cir.1981). Indeed, the claims raised in *Minnesota Chippewa Tribe* are remarkably similar to the Plaintiffs' IRA claim in this case. In *Minnesota Chippewa Tribe*, members of the tribal council challenged a tribal election held to amend the tribe's constitution and bylaws. The tribal council sued the Minnesota Chippewa Tribe and the Secretary of the Interior, claiming the election was conducted using improper tribal voting procedures and under inclusive voting lists in "violation" of IRA. In affirming the district court's dismissal for lack of subject matter jurisdiction, the Eighth Circuit explained that "[t]he [IRA] merely provides the authority and procedures whereby an Indian tribe may organize itself and adopt a tribal constitution and bylaws. The Act makes no mention of jurisdiction in any sense and such is not within its purview." *Id.* at 531.

### 5. Conversion

■ In Count Six of their Amended Complaint, the Plaintiffs allege that the Business Council unlawfully converted the Plaintiffs' property by knowingly allowing net revenues from tribal gaming to be distributed to "nonqualified individuals." (Amend.Compl. ¶¶ 145–148.) This claim falls squarely within the Community's sovereign immunity. Plaintiffs have cited no countervailing authority to demonstrate this immunity has been waived, and in fact have not addressed this claim at argument or in their supporting materials.

### 6. Individual liability of Defendants Crooks, Anderson, and McNeal

■ In Count Seven of their Amended Complaint, Plaintiffs allege that Defendants Crooks, Anderson and McNeal are individually liable for damages caused by their purportedly illegal conduct. Tribal sovereign immunity extends to individual tribal officers acting in their representative capacity and within the scope of their authority. *Stock West Corp. v. Taylor*, 942 F.2d 655, 664 (9th Cir.1991); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir. 1985); *accord Cameron v. Bay Mills Indian Community*, 843 F.Supp. 334, 336 (W.D.Mich.1994.) Sovereign immunity does not, however, bar actions for prospective relief against individual tribal officials who have allegedly acted outside the scope of their permissible authority. *Burlington Northern R.R. v. Blackfeet Tribe of the Blackfeet Indian Reservation*, 924 F.2d 899, 901 (9th Cir.1991), *cert. denied*, ─── U.S. ───, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992); *Davids v. Coyhis*, 869 F.Supp. 1401 (E.D.Wis.1994.) A sovereign official's immunity is removed in this case because the official exercised a power that his or her sovereign was powerless to convey. *State of Wisconsin v. Baker*, 698 F.2d 1323, 1332–33 (7th Cir.1983), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983) (holding that "an official of an Indian tribe should be stripped of his authority, and corresponding immunity, to act on behalf of his tribe whenever he exercises a power his tribe was powerless to convey to him"). Thus the individual Community Defendants are not immune from suit to the extent they violated federal law. *Burlington Northern R.R.*, 924 F.2d at 901.

In this case, Plaintiffs allege that these Defendants violated ICRA and IGRA. Plaintiffs' ICRA claim against these Defendants is easily dismissed. Plaintiffs may not pursue their damage claims based on ICRA. The Supreme Court has explicitly held that a writ of habeas corpus is the *only* federal remedy available under ICRA, and that ICRA "does not ... authorize actions for declaratory or injunctive relief against either the tribe *or its officers.*" *Santa Clara Pueblo*, 436 U.S. at 72, 98 S.Ct. at 1684 (emphasis added).

■ Plaintiffs' claims predicated on the individual Defendants' alleged violations of IGRA present a more difficult question. As the *Davids* court recognized, tribes do not have authority to conduct gaming in violation of IGRA, and as a result, individual tribal officials are not immune from suit for IGRA violations. *Davids*, 869 F.Supp. at 1410–11. On the other hand, the mere allegation that tribal officials violated IGRA does not by itself strip them of sovereign immunity. *See Imperial Granite Co. v. Pala Band of Indians*, 940 F.2d 1269, 1271 (9th Cir.1991) (dismissing plaintiff's claims against individual tribal officials on the grounds of sovereign

immunity when complaint failed to allege facts demonstrating officials' scope of authority was exceeded).

■■■ To determine whether the individual Community Defendants are stripped of their immunity for violating IGRA in this case, a more careful review of the allegations in the Complaint is necessary. In Count Seven of their Complaint, Plaintiffs allege that the individual Community Defendants are individually liable because they:

(1) unlawfully have permitted non-members to vote at and participate in General Council meetings, and to receive benefits and exercise rights reserved only to constitutionally qualified members; (2) knowingly and willfully have distributed tribal gaming revenues to non-members; and (3) knowingly and willfully have prevented qualified voters from exercising rights and receiving benefits, including per capita payments, to which they are entitled, in violation of IGRA, the Community Gaming Ordinance, the Community Constitution and the ICRA.

(Amend.Compl. ¶ 150.) These actions do not constitute a violation of federal law. IGRA requires that tribes engaging in gaming have a distribution plan approved by the Secretary of the Interior as adequate, and the Community has complied with that requirement.

Instead, Plaintiffs' claims are predicated on their belief that the Community has improperly conferred the benefits of membership upon individuals who do not meet the Community's constitutional membership requirements. The Court cannot assess the validity of these claims without determining who the members of the tribe are. However, whether an individual is a "member" of the Community is a legal conclusion, the resolution of which belongs exclusively with the Community, and a federal court does not have jurisdiction to second-guess that determination. As discussed in greater detail above, IGRA does not abrogate that sovereign power. Thus this Court does not have jurisdiction to adjudicate claims against the individual Defendants acting pursuant to Community and Business Council's membership determinations.[7]

■■■ The Plaintiffs also claim that the individual Community Defendants are individually liable because they violated the Community Constitution, the Community's Gaming Ordinance, and breached a "fiduciary duty" owed "to the Plaintiffs and all other similarly situated constitutionally qualified members of the Community." (Amend. Compl ¶¶ 150, 153.) The duties—and corresponding scope of permissible authority—imposed under the Community Constitution, Community ordinances, and pursuant to any fiduciary obligations which may inure to the offices of the Business Council members arise under Community law, not federal law. The Court therefore does not have jurisdiction to consider these claims. *Runs After v. United States,* 766 F.2d 347, 353 (8th Cir. 1985) ("resolution of [ ] disputes involving questions of the interpretation of the tribal constitution and tribal law is not within the jurisdiction of the district court").

### 7. RICO Claims

In Counts Nine, Ten and Eleven of their Amended Complaint, Plaintiffs accuse the

---

7. Additionally, the Plaintiffs have failed to allege how the individual Community Defendants actions, by themselves, caused their injuries. Plaintiffs' quarrel lies with Community and Business Council's membership determinations. It is the official action following the individual Community Defendants' votes with which the Plaintiffs dispute, and it is upon these votes that the Plaintiffs have predicated their federal claims. However, the votes themselves have no legal effect. It is the official action of the Community and the Business Council, as legal entities authorized to act pursuant to these votes, that allegedly has caused the Plaintiffs' injuries. *See Imperial Granite Co. v. Pala Band of Indians,* 940 F.2d 1269, 1271 (9th Cir.1991) (holding that plaintiffs' complaint against tribal officials was barred under doctrine of sovereign immunity because "[t]he [officials'] votes individually [had] no legal effect" and it was "the official action of the Band, following the [officials'] votes, that caused [plaintiff's] injuries"). Although the Plaintiffs have submitted an 87 page Amended Complaint in this case, the actions upon which the Plaintiffs base their claims—membership, voting rights, and per capita distribution determinations—are official actions of the Community and the Business Council, not ultra vires actions of tribal officials. Thus the allegations in Count Seven of the Amended Complaint apparently do not assert an injury apart from the Community or officers of the Community acting in their official capacities.

Business Council and the individual Community Defendants of violating RICO. Plaintiffs raise three separate RICO claims against these Community Defendants: (1) violation of RICO section 1962(b) through extortion under 18 U.S.C. § 1951;[8] (2) violation of RICO section 1962(c) through mail fraud under 18 U.S.C. § 1341;[9] and (3) violation of RICO section 1962(c) through conspiring to violate RICO sections 1962(b) and (c)[10].

■ Plaintiffs RICO claims against the Business Council are barred under the doctrine of sovereign immunity. The Business Council is an arm of Community government, and as such is presumptively immune from suit. Plaintiffs have not demonstrated that this immunity has been waived. RICO contains no language which suggests Congress "unequivocally" waived Indian tribes' sovereign immunity, and Plaintiffs have provided no evidence of a Community waiver. Absent a congressional or tribal waiver, the Community, like other sovereigns, is immune from suit for alleged RICO violations.[11] *See Snowbird Constr. Co. v. United States*, 666 F.Supp. 1437, 1440–41 (D.Idaho 1987) (hold-

ing that tribal sovereign immunity did not bar RICO suit only after concluding that "sue and be sued" clause in tribal ordinance "unequivocally expressed" waiver of sovereign immunity); *see also McMaster v. State of Minnesota*, 819 F.Supp. 1429, 1434 (D.Minn.1993), *aff'd*, 30 F.3d 976 (8th Cir. 1994) (holding that State of Minnesota was immune from RICO suit absent a waiver of its sovereign immunity); *Bair v. Krug*, 853 F.2d 672, 674–75 (9th Cir.1988) (holding that State of Nevada was immune from RICO suit absent a waiver of its sovereign immunity); *Ungaro v. Desert Palace, Inc.*, 1989 WL 199264 (D.Nev.1989) (holding United States government is immune from RICO suit).

■ Plaintiffs' RICO claims against the individual Community Defendants are also barred under the doctrine of sovereign immunity. These claims are based on the same conduct as Plaintiffs' IGRA, ICRA and "individual liability" claims.

In Count Nine of their Amended Complaint, Plaintiffs claim the individual Community Defendants violated RICO section 1962(b) by committing "extortion." The con-

---

**8.** RICO § 1962(b) provides in part "[i]t shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in ... [interstate commerce]." Extortion under 18 U.S.C. § 1951 is included in the definition of "racketeering activity," 18 U.S.C. § 1961(1); and "extortion" is defined as "the obtaining of property from another, with his consent, induced ... under color of official right," 18 U.S.C. § 1951(b)(2).

**9.** RICO § 1962(c) provides in part "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Mail fraud as defined under 18 U.S.C. § 1341 is included in the definition of "racketeering activity." 18 U.S.C. § 1961(1).

**10.** RICO § 1962(d) provides in part "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

**11.** Although the Court's finding that the Business Council is immune from a RICO suit precludes a discussion on the merits of Plaintiffs' RICO claims, the Court notes that this claim fails as a matter of law. The Business Council, as a gov-

ernmental entity, is not capable of forming the criminal intent necessary to support the alleged predicate RICO offenses. *See Lancaster Community Hosp. v. Anelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992) (holding that RICO claims against a public hospital were properly dismissed because "government entities are incapable of forming [the] malicious intent" required under RICO); *County of Oakland v. City of Detroit*, 784 F.Supp. 1275, 1283 (E.D.Mich.1992) (holding that "a municipal corporation cannot form the requisite criminal intent and cannot be held liable under civil RICO laws").

Plaintiffs indirectly concede this point in their Memorandum in Opposition to Defendant's Motion to Dismiss. In response to the Community Defendants' claim of sovereign immunity for the Plaintiff's RICO claims, the Plaintiffs argue that *"individual tribal officials* are protected by a tribe's sovereign immunity only to the extent the tribe is protected. However, *individual tribal officials* are not entitled to immunity for violations of federal statutes."* (Pls' Mem. in Opp. to Mot. to Dismiss at 21 (emphasis added).) Plaintiffs have not argued that the Business Council is amenable to suit on their RICO claims, and in fact have focused exclusively on the individual Defendants.

duct plaintiffs allege constitutes "extortion" is "unlawfully obtaining and distributing tribal gaming revenues to persons who do not meet the Community's constitutional qualifications for membership," and "unlawfully withholding the distributions of such revenues from constitutionally qualified members." (Amend.Compl. ¶ 166.)

In Count Ten of their Amended Complaint, Plaintiffs claim the individual Community Defendants violated RICO section 1962(c) by committing mail fraud. In this Count, Plaintiffs allege that the individual Community Defendants "represented and/or recognized, in violation of IGRA, various constitutionally unqualified individuals as being qualified tribal members, in order to unlawfully distribute net tribal gaming revenues and other benefits or tribal membership to such unqualified individuals" and that these Defendants used the United States mails to "further[ ] their scheme to obtain and unlawfully distribute tribal net gaming revenues under false pretenses to various constitutionally unqualified persons" and to "gain and maintain control of and to conduct the affairs of the Community and its gaming enterprise." (Amend.Compl. ¶¶ 174–75, 177.)

In Count Eleven of their Amended Complaint, Plaintiffs claim the individual Community Defendants violated RICO section 1962(d) by conspiring to commit the violations described in Counts Nine and Ten of the Amended Complaint. Thus Count Eleven is premised on the same membership disputes as Counts Nine and Ten.

Although the Community's immunity does not extend to tribal officials to the extent the officials violated federal law, Plaintiffs' RICO claims are based on the Community's membership determinations, not violations of federal law. Whether asserted against the tribe or against its officials, the Court does not have jurisdiction to resolve intratribal membership disputes. Plaintiffs allege the individual Defendants violated RICO because they engaged in extortion and mail fraud. However, according to Plaintiffs' pleadings, the Court cannot determine whether these Defendants' committed extortion or mail fraud without first concluding that the individuals from whom benefits were withheld are Community "members," or individuals to whom benefits were conferred, are not Community "members." This is a determination the Court cannot make. The Plaintiffs cannot circumvent the Community's exclusive jurisdiction simply by recasting these determinations as RICO violations.

### 8. Subject Matter Jurisdiction Summary

This Court does not have subject matter jurisdiction to hear Plaintiffs' claims against the Community Defendants. These claims are based on the Community's membership determinations. Whether couched in terms of an IGRA, ICRA, IRA, Community Constitution, or RICO violation, this membership determination is within the exclusive jurisdiction and sovereign power of the Community. The Community has not waived its sovereign power to allow a federal court to second-guess these membership determinations, and Congress has not abrogated it. As a result, the Community Defendants' Motion to Dismiss will be granted for lack of subject matter jurisdiction.[12]

### C. Exhaustion

Even if the Court had subject matter jurisdiction over the Plaintiffs' claims, the Community Defendants' Motion to Dismiss would nonetheless be granted because the Plaintiffs have failed to exhaust their tribal court remedies.

Tribal courts play a vital role in encouraging tribal self-government, and the federal government has repeatedly encouraged their development. See Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 14–15, 107 S.Ct. 971, 975–76, 94 L.Ed.2d 10 (1987). Accordingly, "civil jurisdiction over tribal-related activities on reservation land lies presumptively in the tribal courts...." Id. at 18, 107 S.Ct. at 977–78. This Circuit has recognized that "[b]ecause a federal court's exercise of jurisdiction over matters relating to reservation affairs can impair the authority of tribal

---

**12.** The Court has not addressed Count Eight of the Amended Complaint. This Count, entitled "injunctive relief," does not allege a cause of action; instead, Count Eight is a prayer for injunctive relief based on the substantive claims raised in Counts One through Seven.

courts ... the examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court itself." *Duncan Energy Co. v. Three Affiliated Tribes,* 27 F.3d 1294 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 779, 130 L.Ed.2d 673 (1995) (citing *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 856, 105 S.Ct. 2447, 2453–54, 85 L.Ed.2d 818 (1985)).

Plaintiffs have contested the Community and the Business Council's membership determinations in tribal court. On February 17, 1994, Plaintiffs initiated a tribal court proceeding against the same Community Defendants as named in this case. (*See* "Amended Complaint," *Smith v. Shakopee Mdewakanton Dakota (Sioux) Community,* Case No. 038–94, attached at Amend.Compl. Ex. T; Hogen–Kind Aff., Exhs. A1–A6.) In their Amended Tribal Court Complaint, Plaintiffs accused the Community Defendants of making per capita distributions and giving other membership privileges to "nonqualified" individuals, and withholding payments and other benefits from "constitutionally qualified members." (*See* Amend.Compl. Ex. T.) Plaintiffs accordingly sought an injunction preventing the Community Defendants from "allowing any and all persons not meeting the constitutional requirements for membership in the Community from ... receiving any benefits or exercising any rights due qualified members of the [Community]," and a finding that:

> only legitimate, constitutionally qualified members of the [Community] ( ... as consistent with Article II, Section 1 of the Community's Constitution) be allowed to (1) vote at and participate in all elections and meetings of the General Council and the Community Corporation and (2) to receive the benefits and exercise the rights due them under the Constitution, By-laws,

Ordinances, Resolutions and Articles of incorporation and related documents of the Community Corporation.

(*Id.* at 23, 24.) In short, Plaintiffs' tribal court action is premised on the same conduct and membership determinations as the underlying claims in this proceeding. This action is pending in tribal court. (*See id.* Ex. Y.)

After reviewing Plaintiffs' tribal court claims, it is clear that even if the Court had subject matter jurisdiction over Plaintiffs' claims, the Court would nevertheless dismiss the Amended Complaint pending final resolution of the tribal court proceedings. The Eighth Circuit has recently explained that "[t]he requirement of exhaustion of tribal remedies is not discretionary; it is mandatory. If deference is called for, the district court may not relieve the parties from exhausting tribal remedies." *Duncan Energy,* 27 F.3d at 1300 (quoting *Crawford v. Genuine Parts, Co.,* 947 F.2d 1405, 1407 (9th Cir. 1991)). The Eighth Circuit also explained that a dispute which "aris[es] on [a] [r]eservation that raises questions of tribal law and jurisdiction ... should first be presented to the tribal court." *Id.* Plaintiffs' action in this Court unquestionably raises questions of tribal law. As a result, if the Court had subject matter jurisdiction in this case, Plaintiffs' Amended Complaint would be dismissed pending final resolution of the Plaintiffs' tribal court proceeding.[13]

## II. Plaintiffs' Motion For Temporary Injunction

Because the Plaintiffs' claims against the Community Defendants have been dismissed, the Government Defendants are the only remaining parties in this action to whom Plaintiffs' Motion for a Preliminary Injunc-

---

13. Once tribal remedies have been exhausted, the tribal court's resolution of tribal law, and in particular its determination of who is a "member" of the Community, would not be subject to review by this Court. *See Runs After,* 766 F.2d at 352 (holding that federal courts do not have jurisdiction to interpret a tribal constitution or tribal laws); *Burlington Northern R.R. v. Crow Tribal Council,* 940 F.2d 1239, 1246 (9th Cir. 1991) (explaining that exhaustion of tribal court

remedies would provide any subsequently reviewing federal court with an "authoritative interpretation" of tribal law). Moreover, unless the Court determines the tribal court lacked jurisdiction, Plaintiffs are precluded from relitigating issues raised and resolved in the tribal forum. *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 19, 107 S.Ct. 971, 978, 94 L.Ed.2d 10 (1987); *United States v. Turtle Mountain Housing Auth.,* 816 F.2d 1273, 1277 n. 2 (8th Cir.1987).

tion applies.[14] In determining whether to issue a preliminary injunction, the Court must consider the following four factors:

(1) the probability that the moving party will succeed on the merits;

(2) the threat of irreparable harm to the moving party should a preliminary injunction be denied;

(3) the balance between this harm and the harm that granting the injunction will cause to the other parties litigant; and

(4) the public interest.

*West Publishing Co. v. Mead Data Central, Inc.,* 799 F.2d 1219, 1222 (8th Cir.), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1986); *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc). None of the factors by itself is determinative; rather, in each case the district court should balance all four factors. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 988 F.2d 61, 64 (8th Cir. 1993). A preliminary injunction is generally considered to be "a drastic and extraordinary remedy [which] is not to be routinely granted." *See, e.g., Intel Corp. v. ULSI Sys. Tech., Inc.,* 995 F.2d 1566, 1568 (Fed.Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994). The party requesting the injunction bears "the complete burden of proving that a preliminary injunction should be granted." *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987).

### A. Probability of Success on the Merits

Like the claims asserted against the Community Defendants, Plaintiffs' claims against the Federal Defendants are based on Plaintiffs' version of the Community's membership requirements. In Counts One, Twelve and Thirteen of their Amended Complaint, Plaintiffs allege that Defendant Babbitt, through his agents, and Defendant Monteau, as Chair of the National Indian Gaming Commission, violated IGRA and breached various common law and statutory duties purportedly owed to the Community's "constitutionally qualified members" by permitting per capita gaming distributions and other benefits to be given to "non-members," by approving the Community's gaming revenue allocation plan, by failing to withdraw approval of the revenue allocation plan after becoming aware of substantial IGRA violations, and by otherwise failing to monitor and enforce tribal compliance with IGRA. (Amend.Compl. ¶¶ 100–122; 186–197.)

█ Plaintiffs have not demonstrated they are likely to succeed on the merits of these claims. As a threshold issue, Plaintiffs have not demonstrated this Court has jurisdiction to review the Federal Defendants' decisions not to investigate or sanction the Community for its membership determinations. An agency's nonenforcement decision is presumptively not subject to judicial review. *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529, 531 (8th Cir.1967) (holding that discretionary action of Secretary of the Interior in ratifying and approving amendments to a tribal constitution and by-laws was not subject to judicial review); *see also Ross v. Flandreau Santee Sioux Tribe,* 809 F.Supp. 738, 745 (D.S.D. 1992) (explaining that "[n]o authority is cited for the proposition that district courts can review or direct the discretion of the Secre-

---

**14.** Plaintiffs request the following injunctive relief: (1) an order directing the Secretary of the Interior to withdraw approval of the Community's October 27, 1993 Amended Revenue Plan; (2) an order directing the Secretary of the Interior to issue a cease and desist order to the Community Defendants enjoining further distribution of gaming proceeds until the Secretary determines that only constitutionally qualified members will receive gaming distribution payments; (3) an order placing all money not yet spent by the Business Council in escrow; (4) an order directing the Secretary to withhold approval of any distribution plan pending the preparation

and Court review of gaming revenues distributed to members or purported members since November 1, 1988; (5) an order enjoining the Business Council and Defendants Crooks, Anderson, and McNeal from participating in tribal government and directing the appointment of a trustee to preserve gaming revenues and manage the Community's business affairs; and (6) an order enjoining the Community and Business Council from taking any retaliatory action against the Plaintiffs until conclusion of this action.

(Pls.' Mem. in Supp. of Mot. for Prelim.Inj. at 22–23.)

tary in making the decision to approve or disapprove a per capita distribution plan under 25 U.S.C. § 2710(b)(3)(B), and it is the view of the Court that it lacks such power"). Plaintiffs have not demonstrated Congress altered that presumption when it enacted IGRA § 2710.

Moreover, Plaintiffs have not demonstrated they have standing to contest the Federal Defendants' approval of the Community's distribution plan or its nonenforcement decision. Several of the Plaintiffs in this action appealed the Secretary's initial approval of the Community's distribution plan to the Interior Board of Indian Appeals ("IBIA"), claiming the plan violated IGRA and ICRA and requesting the IBIA withdraw approval. The IBIA held that the Plaintiffs lacked standing to pursue this claim. *Feezor v. Acting Minneapolis Area Director,* IBIA 94–36–A, 25 IBIA 296 (April 28, 1994) (Federal Defs' Ex. B.) Plaintiffs have not shown this determination was erroneous.

Even if the Court had jurisdiction to review their claims, Plaintiffs have not demonstrated a likelihood of success on the merits of these claims. IGRA requires the Secretary to review a tribe's distribution plan and approve it, if it meets the requirements of 25 U.S.C. § 2710(b)(3). The Secretary complied with this requirement, determining that the Community's plan—including its provision that "[t]he decision as to those persons entitled to share in Community gaming profits is strictly an internal Tribal matter and an inherent right and power of the Tribe," (Amend.Compl. Ex. I, § 14.5, pt. A)—was "adequate." The "adequacy" of a tribal gaming ordinance falls within the expertise of the BIA and the NIGC, and as such, is entitled to significant deference. *See* 5 U.S.C. § 706(2)(A); *Lile v. University of Iowa Hosp.,* 886 F.2d 157, 160 (8th Cir.1989) (recognizing that courts accord significant deference to an agency decision where agency expertise is involved). Plaintiffs have not demonstrated the Federal Defendants abused their discretion.

Plaintiffs have also not demonstrated the Federal Defendants have breached any fiduciary obligations owed to the Plaintiffs. Nothing in the language of IGRA indicates that Congress imposed a duty on the Secretary or his subordinates to determine tribal membership for eligibility for per capita payments under a gaming distribution plan. Similarly, the federal government does not have a fiduciary obligation to challenge the Community's membership determinations in this case. Although the federal government has a fiduciary obligation to protect property held in trust for the tribe, *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), the funds used to make per capita gaming distributions do not form part of this trust corpus. These funds are generated by the Community's corporate gaming enterprise, are managed by the Community, and have no different status than other revenues from tribal businesses.

The Plaintiffs have not demonstrated they are likely to succeed on the merits of their claims against the Federal Defendants. As a result, the first *Dataphase* factor weighs in favor of the Federal Defendants.

### B. Threat of Irreparable Harm

Plaintiffs contend a variety of irreparable injuries will result if the Court does not issue the requested injunction. Plaintiffs claim that each time a "constitutionally unqualified" individual is admitted into the Community, the Plaintiffs' votes are diluted, the ability of the Plaintiffs to govern the Community and its businesses is irreparably impaired, and the resources available to make per capita distributions to "qualified" members of the Community are permanently diminished. (Pls.' Mem. in Supp. of Mot. for Prelim. Inj. at 16–20; Pls.' Reply Mem. in Supp. of Mot. for Prelim. Inj. at 18–19.)

Assuming, for the purposes of this factor, that the Community has wrongfully admitted individuals as members of the Community, the Plaintiffs have sufficiently demonstrated a threat of irreparable harm. Federal courts have jealously guarded citizens' rights to vote as central to their ability to participate in and control government. There is no reason why the Community members' rights to participate in and control their tribal government and its enterprises should be treated any differently. To the extent the Plaintiffs' ability to direct the affairs to the Community has

been wrongfully diluted, the Plaintiffs will suffer irreparable injury if "non-members" continue to receive membership voting privileges and "constitutionally qualified members" are denied voting privileges.[15]

Plaintiffs have demonstrated that the Community's membership determinations poses a threat of irreparable injury. The second *Dataphase* factor therefore weighs in their favor.

### C.  Balance of Harms

Granting the injunction Plaintiffs seek would inflict significant harm on the Community and its members. Plaintiffs request this Court to unseat the officers selected by the Community to run the Community's business affairs, to take control of the Community's gaming enterprise away from the Community and place it with a court appointed trustee, to restrict the Community's elections to "constitutionally qualified" members, and to immediately enjoin. all per-capita distributions to any individuals, including "constitutionally qualified members." (Pls.Mot. for Prelim.Inj. ¶¶ C–D.)

The harm caused to the Community and its members by imposing this relief far outweighs that caused by not issuing the injunction. Unseating the Community's elected tribal officials, disrupting the Community's membership determinations, intruding in the Community's electoral processes, and limiting the right to participate in Community governance to purportedly "constitutionally qualified" Community members fundamentally impairs the Community's sovereign power of self-governance and self-determination. In this respect, the "irreparable harm" alleged by the Plaintiffs is equally applicable to the Community's "constitutionally unqualified" members. Plaintiffs' relief would not preserve the status quo. Instead, it would take away the rights—denial of which the Plaintiffs allege causes irreparable injury—of the purportedly "constitutionally unqualified" members to participate in tribal government and receive membership benefits. If these individuals are later determined to be legitimate "members" of the Community, their rights will accordingly have been irreparably harmed.

Plaintiffs' request to place control of the Community's businesses with an appointed trustee poses an even greater harm. Requiring a sovereign tribe to surrender control of its business enterprise to a federally selected trustee is a self-evident affront to tribal sovereignty. This not only denigrates the Community's sovereignty, it also may permanently impair the viability of its businesses. The Community's gaming enterprise, Little Six Inc., is a sophisticated, multi-million dollar corporation doing business in one of the most highly regulated industries in the country. Under Community direction, the Community's gaming facility has become one of the most successful and profitable casinos in this industry. Moreover, the Community's interest in its gaming facility is not purely economic. As indicated during argument, managing the Community's businesses requires balancing the unique interests of the tribe and its mores in making business decisions. It would be unrealistic to presume an outside trustee would be able to step in and run the Community's businesses, assess the Community's unique interests, and preserve the status quo in the face of these complexities. Thus the balance of harm in this case weighs heavily in favor of not issuing the Plaintiffs' proposed injunction.

### D.  Public Interest

As detailed throughout this Memorandum Opinion and Order, both Congress and the federal courts have consistently and repeatedly emphasized the federal policy of promoting tribal governments and tribal self-sufficiency. The injunction the Plaintiffs request is a direct affront to that policy. It requires the Court to interfere with tribal membership determinations, control tribal

---

**15.**  Moreover, the court in *Maxam* concluded that loss of per capita payments "pose[d] a threat of irreparable harm" under the *Dataphase* analysis because "the casino business is a risky enterprise" and because "it [was] possible that plaintiffs could be found to have been improperly denied per capita payments but unable to obtain compensation due to inadequate casino revenues." *Maxam v. Lower Sioux Indian Community of Minnesota,* 829 F.Supp. 277, 283 (D.Minn. 1993.)

businesses, and unseat elected tribal officials. Indeed, it is hard to imagine a more dramatic vilification of federal Indian policy than granting the relief the Plaintiffs seek. The Community has a tribal forum in which Plaintiffs' case is pending, and that is where it should be resolved.

### E.  Dataphase Summary

Plaintiffs have not demonstrated they are entitled to injunctive relief in this case. Although Plaintiffs have demonstrated a threat of irreparable harm, Plaintiffs are not likely to succeed on the merits of their claims against the Federal Defendants, the harm caused by granting the Plaintiffs' proposed injunction far exceeds the harm which may result from denying the injunction, and the relief sought is contrary to public policy.

### Conclusion

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein, including the arguments of counsel, IT IS ORDERED that:

(1) Community Defendants' Motion to Dismiss (Doc. No. 9) is **GRANTED,** and Plaintiffs claims against Defendants Community, Business Council, Stanley Crooks, Kenneth Anderson and Darlene McNeal are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;  and

(2) Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 3) is, in all respects, **DENIED.**[16]

---

16.  The foregoing Memorandum Opinion and Order constitutes the Court's finding of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.