Louis L. MONTGOMERY III; Susan M. Montgomery; Clarence A. Montgomery; Elizabeth A. Montgomery; Lance L. Montgomery; Danielle K. Montgomery; Andrew D. Montgomery; Percy I. Montgomery; Becky Montgomery Mejia; Dana D. Rederth; and Michelle M. Springer, for themselves and others similarly situated, Plaintiffs,

v.

The FLANDREAU SANTEE SIOUX TRIBE; d/b/a Flandreau Santee Sioux Tribe, Inc.; and/or Royal River Casino; the Flandreau Santee Sioux Tribal Executive Committee and its President, Richard P. Allen; Vice President, George Allen, Jr.; Treasurer, Joyce Doyle; Trustee # 1, Duane Ross; Trustee # 2, Joann Sundermeyer; Tribal Attorney, Albert Jones; Enrollment and Records Clerk, Fannie Armstrong; Mesirow Financial; David Volk In His Official Capacity as Vice President; Enrollment Committee Members; Richard P. Allen; Beverly A. Wakeman; Ida Hasvold; William Beane; Eloise Drapeau; and Several John Does (Names Unknown), Defendants.

No. CIV 95–4028.

United States District Court,
D. South Dakota,
Southern Division.

Oct. 10, 1995.

Becky Montgomery Mejia, Flandreau, SD, pro se.

Michelle M. Springer, Flandreau, SD, pro se.

Terry L. Pechota, Rapid City, SD, for Defendants.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

Plaintiffs bring this eleven count suit pro se against the Flandreau Santee Sioux Tribe and tribal officials challenging: (1) defendants' decisions denying tribal membership to certain plaintiffs who wish to receive per capita payments from the Tribe's net gaming revenue and (2) defendants' misapplication of gaming revenue. Plaintiffs assert federal question jurisdiction under 28 U.S.C. § 1331. The Tribe and its officials move to dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rule of Civil Procedure 12(b).

■ Plaintiff Becky Montgomery Mejia is the mother of plaintiffs Louis, Susan, Clarence, Elizabeth, Lance, Danielle, Andrew, and Percy Montgomery.[1] Plaintiff Dana Rederth is Ms. Mejia's brother, and plaintiff Michelle M. Springer is Ms. Mejia's cousin. On September 28, 1995, the Court held a hearing on the motion to dismiss. At the hearing, Ms. Mejia, Mr. Rederth, and Ms. Springer appeared in person.[2] Counsel for the Tribe and its officials, Terry Pechota, appeared by telephone. Because plaintiffs and defendants have presented evidence outside the pleadings, the Court may consider those documents to the extent the materials are necessary to determine whether the Court has subject matter jurisdiction over the claims asserted. *See Smith v. Babbitt,* 875 F.Supp. 1353, 1359 (D.Minn.1995).

Having carefully considered the entire record and the applicable law, the Court grants defendants' motion and dismisses Counts I through VI and Count X, as more fully discussed below. The Court dismisses Count VII and defendants Mesirow Financial and David Volk because plaintiffs have not filed proof of service upon them and these defendants have not made an appearance in this suit. In light of the Court's decision to dismiss the substantive counts against named defendants, the Court also dismisses Count VIII, which alleges conspiracy on the part of unnamed John Doe defendants; Count IX, which alleges a pendent state law conversion claim; and Count XI, which requested class certification. Each of these dismissals is without prejudice.

## Jurisdiction Premised on *Ross* Settlement Agreement

■ Before discussing each separate count of the complaint, the Court notes that plaintiffs allege in ¶ 5 of the complaint that federal jurisdiction is proper because section 12 of the Settlement Agreement approved by United States District Judge John B. Jones in a previous class action case brought by tribal members against the Tribe, *Ross v. Flandreau Santee Sioux Tribe,* 809 F.Supp. 738 (D.S.D.1992), permits federal court juris-

---

**1.** The Court notes that Louis L. Montgomery III turned twenty-one years of age on August 31, 1995, while this suit was pending, but the remaining children are minors who are represented by Ms. Mejia.

**2.** At the hearing, plaintiffs presented evidence regarding the Tribe's failure to enroll and make per capita payments to the minor children of Mr. Rederth and Ms. Springer, to the adopted children of Ms. Mejia, and to Sally Ann Rederth, Ms. Mejia's adopted sister. These individuals are not specifically named as plaintiffs in the complaint, and because they are not parties, the Court does not consider any claims they may have.

diction "for a breach of that agreement." (Complaint at ¶ 5.) The *Ross* Settlement Agreement is not as broadly worded as plaintiffs suggest, for the Agreement states in ¶ 12 that "either party shall be able to seek the protection of the Federal District Court for a breach of this agreement[.]" (Doc. 3, Ex. 7 at 7.) To determine who the plaintiffs were in *Ross,* the Court took judicial notice of the official court file in that case. Judge Jones certified a class of "[a]ll enrolled members of the Flandreau Santee Sioux Tribe not residing within Moody County, South Dakota, with respect to all pending claims in plaintiff's complaint." *Ross,* 809 F.Supp. 738, Order Certifying Class (D.S.D. Dec. 1, 1992). Plaintiffs here allege in their complaint at ¶ 1 that "all of the plaintiffs are residing within the Moody County area in the state of South Dakota."[3] Thus, plaintiffs were not members of the class certified in *Ross,* and because they were not a party in that case, they may not rely on the *Ross* Settlement Agreement to establish federal jurisdiction in this case. Further, plaintiffs lack standing to assert a breach of the *Ross* Settlement Agreement.

## Violation of the Corporate Charter (Count I)

Plaintiffs allege that the Tribe has waived its sovereign immunity by giving consent in its corporate charter to "sue and be sued." Plaintiffs further allege that defendants display favoritism in disbursing casino profits to a minority of tribal members in violation of a corporate charter provision directing that financial assets must be distributed equally among tribal members. Plaintiffs claim that defendants' actions "violate the laws and Constitution of the United States, as more fully set forth in Counts II, III, IV and V below[.]"

Neither plaintiffs nor defendants have provided the Court with a copy of the Tribe's corporate charter. Taking as true plaintiffs' allegation that the Tribe waived its sovereign immunity in the corporate charter, as the Court must do on a motion to dismiss, the Court must nonetheless consider whether

plaintiffs can state a private cause of action against defendants in each of Counts II through V. The Court concludes that plaintiffs cannot, even assuming that all plaintiffs are enrolled tribal members.

■ The Court considers Counts II and III together, as these counts claim that defendants violated the Indian Gaming Regulatory Act (IGRA), specifically 25 U.S.C. § 2710, by making per capita payments from net gaming proceeds that are not equally divided among tribal members as contemplated by 25 C.F.R. § 111.1 (1995). Even assuming that defendants violated § 2710 and that plaintiffs have been harmed by the violation, that alone does not give rise to a private cause of action under the IGRA. *See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida,* 63 F.3d 1030, 1049 (11th Cir.1995).

Congress explicitly included certain private rights of action in the IGRA; for example, a Tribe may sue the Chairman of the National Indian Gaming Commission if a management contract is not approved or disapproved within the period set by statute, 25 U.S.C. § 2711(d), and all decisions of the Commission are subject to federal judicial review, 25 U.S.C. § 2714. *See Tamiami Partners, Ltd.,* 63 F.3d at 1049. " '[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.' " *Id.* (quoting *National R.R. Passenger Corp. v. National Assoc. of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974)); *Davids v. Coyhis,* 869 F.Supp. 1401, 1410 (E.D.Wis.1994) (holding that IGRA's specific grant of federal jurisdiction for certain actions indicates Congress intended to limit federal jurisdiction to those instances). Consequently, the Court holds that plaintiffs cannot assert a private cause of action under the IGRA. *See Tamiami Partners, Ltd.,* 63 F.3d at 1049; *Davids,* 869 F.Supp. at 1410.

■ In Count IV, plaintiffs claim that defendants' actions violate the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1301–03.

---

**3.** Plaintiffs also allege that Ms. Mejia's four youngest children "are waiting to be enrolled"

and the evidence presented at the hearing supports this allegation. (Ex. L.)

The Supreme Court has held, however, that the ICRA does not expressly provide for private causes of action other than a writ of habeas corpus and none may be implied. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 64–65, 98 S.Ct. 1670, 1680–81, 56 L.Ed.2d 106 (1978). *See also Runs After v. United States*, 766 F.2d 347, 353 (8th Cir.1985); *Smith*, 875 F.Supp. at 1363. Thus, plaintiffs cannot state a private cause of action under the ICRA.

■■■■ In Count V, plaintiffs claim a violation of 42 U.S.C. § 1985. The Court assumes that plaintiffs refer to § 1985(3), which prohibits conspiracies that are intended to deprive "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." To satisfy the requirements of § 1985(3), plaintiffs must allege violations of statutory or constitutional rights that the federal courts have jurisdiction to redress. *See Wheeler v. Swimmer*, 835 F.2d 259, 261 (10th Cir.1987). "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violations of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). "Plaintiffs must look to the [Indian Civil Rights Act] ICRA as the source of their alleged entitlement to the rights and privileges of tribal membership, because federal constitutional protections extend to individual Indians only to the extent incorporated in the ICRA." *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1462 (10th Cir.1989). As discussed above, however, the plaintiffs cannot state a cause of action under the ICRA, *Santa Clara Pueblo*, 436 U.S. at 64–65, 98 S.Ct. at 1680–81, and thus, § 1985(3) does not provide an independent remedy. *Swimmer*, 835 F.2d at 261–62. The tribal forum is available to vindicate rights under the ICRA. *Santa Clara Pueblo*, 436 U.S. at 65, 98 S.Ct. at 1680. Thus, this claim fails, as have Counts II through IV. Because plaintiffs cannot state causes of action in Counts II through V even if sovereign immunity is waived, Count I, alleging violation of the corporate charter, must be dismissed.

**Violations of the Indian Gaming Act (Counts II & III)**

■■■■ Having dismissed Count I, the Court must next consider whether federal jurisdiction exists to entertain Counts II and III if the Tribe has not waived its sovereign immunity in the corporate charter. The Court has subject matter jurisdiction to consider whether defendants have complied with the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701–2721. *See Maxam v. Lower Sioux Indian Community of Minnesota*, 829 F.Supp. 277, 281 (D.Minn.1993) (holding that, by engaging in gaming, Tribe waives sovereign immunity for narrow purpose of determining Tribe's compliance with the IGRA). As a result of the district court's decision in *Ross*, 809 F.Supp. 738, the Secretary of the Interior, through the Bureau of Indian Affairs, approved the Tribe's Amendments to its Gaming Revenue Allocation Ordinance. (Doc. 4, Ex. 4.) Consequently, the Court determines that the Tribe complied with the IGRA by obtaining approval of its Gaming Revenue Allocation Ordinance as required, and therefore, this Court lacks subject matter jurisdiction to consider further whether the Tribe has complied with its Ordinance.[4] *See Maxam*, 829 F.Supp. at 281.

As recognized by Judge Jones at the hearing to approve the Settlement Agreement in *Ross*, (Doc. 4, Ex. 5), the Tribe's Gaming Revenue Allocation Ordinance expressly provides that, if an individual is denied confirmation of residency or qualified status to receive per capita payments, the individual must bring an action in Tribal Court because the Tribe has expressly waived its sovereign immunity for the limited purpose of permitting such suits. Any Tribal Court decision is binding. (Doc. 4, Ex. 4, ¶ D at 12.) Thus, this Court lacks subject matter jurisdiction and Counts II and III must be dismissed.

**Violation of the Indian Civil Rights Act (Count IV)**

As discussed above, plaintiffs do not have a private right of action under the Indian Civil Rights Act (ICRA), for the only remedy Congress provided is a writ of habeas corpus.

**4.** The Court will address the individual liability of tribal officials in discussing Count X below.

*Santa Clara Pueblo,* 436 U.S. at 72, 98 S.Ct. at 1684; *Runs After,* 766 F.2d at 353; *Smith,* 875 F.Supp. at 1362. Accordingly, the Court lacks subject matter jurisdiction to hear this claim and it must be dismissed.

### Violation of 42 U.S.C. §§ 1985 & 1988 (Counts V & VI)

 Count V must be dismissed for the reasons stated earlier. Section 1985(3) is a remedy statute that looks, in this case, to the Indian Civil Rights Act as the source of plaintiffs' entitlement to the rights and privileges of tribal membership. Because plaintiffs may not bring a private cause of action under the ICRA, they may not do so under § 1985(3). *See Nero,* 892 F.2d at 1462. Because Count V fails, the plaintiffs have no basis to recover attorney's fees under § 1988, so Count VI must be dismissed.

### Individual Liability of Defendants (Count X)

 A Tribe's sovereign immunity extends to tribal officials acting in their official capacities and within the scope of their authority. *Burlington Northern R.R. Co. v. Blackfeet Tribe,* 924 F.2d 899, 901 (9th Cir. 1991), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992). "Sovereign immunity does not bar injunctive or declaratory relief against individual tribal officials who allegedly acted outside the scope of their authority." *Davids,* 869 F.Supp. at 1409. Thus, tribal officials are not immune from suit if they violate federal law. *Burlington Northern R.R. Co.,* 924 F.2d at 901.

 Plaintiffs allege that tribal officials violated a fiduciary duty to plaintiffs and "acted outside the scope of their official duties and in direct violation of the power entrusted to them by the corporate charter, by federal law, and by ordinary notions of fairness to the tribal members at large." Complaint at ¶ 51–52. Plaintiffs seek damages for these violations. The Court construes the pro se complaint to allege in Count X that the individual defendants acted outside the scope of their authority in denying enrollment to certain of the plaintiffs, as otherwise qualified tribal members, so that they may receive per capita payments and in failing to comply with the Tribe's Gaming Revenue Allocation Ordinance in deciding how net gaming revenues are spent.

Any fiduciary duty tribal officials would owe to plaintiffs would arise from the Tribal Constitution, Tribal By–Laws, Corporate Charter, or tribal ordinances, including the Gaming Revenue Allocation Ordinance. Whether any fiduciary duty exists and the source of that duty is a matter for the Tribal Court to decide. Because plaintiffs point to sources of tribal law and not federal law, this Court does not have subject matter jurisdiction to consider a claim of breach of fiduciary duty. *See Burlington Northern R.R. Co.,* 924 F.2d at 901. Plaintiffs must bring such a claim in Tribal Court.

Plaintiffs allege that tribal officials have denied membership to some of them while granting membership to others with lesser degrees of Indian blood. In holding that an implied private right of action may not be read into the Indian Civil Rights Act, the Supreme Court stated that a "tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo,* 436 U.S. at 72 n. 32, 98 S.Ct. at 1684 n. 32. "Given the often vast gulf between tribal traditions and those with which federal courts are more intimately familiar, the judiciary should not rush to create causes of action that would intrude on these delicate matters." *Id. See also Smith,* 875 F.Supp. at 1364 (holding that federal court lacks jurisdiction to decide tribal membership disputes). Giving deference to the Tribe's right as a sovereign to determine its own membership, the Court holds that it lacks subject matter jurisdiction to determine whether any plaintiffs were wrongfully denied enrollment in the Tribe. Plaintiffs must pursue these claims in Tribal Court. The other side of sovereign immunity for Indian people is that if they receive no redress in Tribal Court, then there is no further appeal and there is no remedy in federal court. Whether or not there would be any potential remedy in some instances in state court is not before this Court.

 Finally, plaintiffs claim that tribal officials have violated the Tribal Gaming

Revenue Allocation Ordinance. If this claim is confined to whether the Ordinance has been followed, plaintiffs' remedy is in Tribal Court. *See Runs After,* 766 F.2d at 353 (holding that resolution of tribal law disputes are not within federal court jurisdiction). If plaintiffs' claim that tribal officials' violation of the Ordinance also violates the IGRA, the Court finds nonetheless that it lacks jurisdiction to consider the claim. As earlier discussed, plaintiffs do not have a private cause of action under the IGRA to raise this claim in federal district court.

As to the alleged Ordinance violations, however, plaintiffs may not be without recourse. They might bring the alleged violations to the attention of the National Indian Gaming Commission, which has the power to enforce tribal ordinances through civil fines of up to $25,000 per violation and temporary or permanent closures of gaming operations, 25 U.S.C. § 2713; the plaintiffs could bring the alleged violations to the attention of the State, which is authorized to initiate an action in federal district court to enjoin Class III gaming conducted in violation of the Tribal–State Compact, 25 U.S.C. § 2710(d)(7)(A)(ii); or, as previously noted, the plaintiffs could pursue whatever remedies are available in Tribal Court or otherwise as provided by the terms of the Ordinance. *See Davids,* 869 F.Supp. at 1412 n. 13. Accordingly, for all of the foregoing reasons,

IT IS ORDERED that defendants' Motion To Dismiss (Doc. 3) is granted and the complaint is dismissed without prejudice.

## JUDGMENT

In accordance with the Memorandum Opinion and Order filed this date with the Clerk,

IT IS ORDERED, ADJUDGED, AND DECREED that defendants' Motion To Dismiss is granted and plaintiffs' complaint is dismissed without prejudice.