**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

---

**No. 95-30091**

---

**BERTNEY LANGLEY, et al.**

**Plaintiffs-Appellants,**

**VERSUS**

**JAY DARDENNE, Senator,**

**Intervenor Plaintiff-Appellant,**

**EDWIN W. EDWARDS, et al.,**

**Defendants-Appellees.**

---

**Appeal from the United States District Court**
**For the Western District of Louisiana**
**(94-1953)**

---

January 12, 1996

Before DAVIS AND PARKER, Circuit Judges; BUNTON,[*] District Judge.

PER CURIAM:[1]

Six members of the Coushatta Tribe of Louisiana and one Louisiana state senator brought suit against the Secretary of the Department of the Interior; Edwin W. Edwards, Governor of the State of Louisiana; and Harold Monteau, Chairman of the National Indian Gaming Commission, seeking declaratory and injunctive relief which would prevent casino gaming on the Coushatta tribal

---

[*] District Judge of the Western District of Texas, sitting by desingation.

[1] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1

lands.

The District Court, Honorable Edwin F. Hunter presiding, dismissed Plaintiffs' complaint holding that the Plaintiffs did not have standing to challenge the tribal gambling compact entered pursuant to the Indian Gaming Regulatory Act ("IGRA"). We think the District Court was correct.

We review de novo a District Court's standing determination, employing an approach that, in practice, differs little from that used to review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). In conducting our review, we are obliged to accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party. Warth v. Seldin, 422 U.S. 490, 501. The issue here is whether Plaintiffs have standing to pursue their claim in federal court under the IGRA. Standing is the determination of whether a specific person is the proper party to bring a particular matter to the Court for adjudication. Erwin Chemerinsky, Federal Jurisdiction § 2.3 at 48 (1989).

The IGRA was passed to establish a statutory framework for the regulation of Indian gaming. 25 U.S.C. §§ 2701-2721. Specifically, the Act provides that:

> Indian tribes have the exclusive right to regulate gaming activity on Indian lands if gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity.

25 U.S.C. § 2701(5).

For a party to sue for declaratory and injunctive relief on the grounds that the Secretary's decision to place property into trust for the purpose of gaming was arbitrary and contrary to law and alleging that the State of Louisiana was without the statutory or legal authority to enter into the gaming compact, the party must first have legal standing. For the Appellants to have standing, they must meet three requirements:

> 1) the plaintiff must have suffered an 'injury in fact' --an invasion of a legally protected interest--and such injury must be concrete and particularized, and actual or imminent as opposed to merely hypothetical or conjectural;
>
> 2) there must be a causal connection between the injury and the conduct of which the plaintiff complains, that is, the injury must be 'fairly traceable' to the challenged action of the defendant and not the result of the actions of some third party; and

3) it must be likely, rather than merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, -- U.S. --, --, 112 S.Ct. 2130, 2136 (1992).

The Appellants can be grouped into two categories for determining standing. The six members of the Coushatta Tribe are one class of Appellants. Louisiana State Senator Jay Dardenne is a separate class. The tribe members will be discussed first.

### A. The Tribal Appellants

In Willis v. Fordice, No. 94-60299, slip op. 3, (5th Cir. 1995), we held that individual tribal members who disagree with the tribe's decision to bring gaming to the reservation do not have standing to assert his or her claims in federal court. The appellant in Willis alleged that the opening of a casino on tribal lands would "cause damage to his tribal homeland by increasing crime and altering the community 'in a manner hostile to his traditional and religious beliefs.'" Further, appellant claimed that the casino would attract competitors to threaten his Indian novelty shop. Like Willis, the Appellant tribal members alleged that the opening of the casino on tribal lands would result in a"diminution of the aesthetics of the tribal homeland with a threat to the continued viability of their cultural heritage." This alleged injury, like that in Willis, does not meet the Lujan injury requirement. The injury Appellants claim is not a direct economic injury as it was in the cases that have allowed individual tribal members to litigate claims under the IGRA. See United States Ex Rel. Mosay v. Buffalo Bros. Mgmt. 20 F.3d 739 (7th Cir. 1995), cert denied, 115 S.Ct. 185 (1994); Maxam v. Lower Sioux Indian Comm., 829 F. Supp. 277 (D. Mn 1993); Ross v. Flandreau Santee Sioux Tribe, 809 F. Supp. 738 (D. S.D. 1992). Furthermore, insomuch as the Appellants allege a "procedural injury" as a result of not having gaming established on the reservation in accord with the procedures of the IGRA, the presence of a "procedural injury" will not cure the absence of a direct injury. See Lujan 112 S.Ct. at 2142. Because the tribal Appellants have not satisfied Willis' particularized harm requirement nor established that they have a legally protected right to be free from gambling, and Appellants have not met the first prong of the Lujan test, it is this Court's opinion that the tribal Appellants lack standing to pursue their action.

3

## B. Louisiana State Senator

State senator Jay Dardenne intervened in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. It is unclear from the Magistrate Judge's order granting intervention whether Dardenne was allowed to intervene as a matter of right, or under the permissive intervention rules. In any event, an intervenor may not continue a suit in the absence of the original party without showing that he fulfills the standing requirements of Article III. Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc., 32 F.3d 205, 208 n.6 (5th Cir. 1994).

Senator Dardenne argues that he has standing to maintain this suit because it is necessary to protect the effectiveness of his right to vote in the state legislature on whether to permit gaming at the casino site. State legislators have standing to challenge official actions in certain limited circumstances. Korioth v. Briscoe, 523 F.2d 1271, 1277 (5th Cir. 1975). For example, a legislator can sue on the grounds that his effectiveness as an elected representative has been diminished. Coleman v. Miller 307 U.S. 433 (1939). However, the refusal of another branch of government to follow law that was passed by a legislator does not qualify as the type of "loss of effectiveness" required for standing. Chiles v. Thornburgh, 865 F.2d 1197, 1205 (11th Cir. 1989). Senator Dardenne's interest in the enforcement of Louisiana law is not enhanced because he helped pass the law. In fact, his interest is "indistinguishable from that of any other citizen." Harrington v. Schlesinger, 528 F.2d 455, 459 (4th Cir. 1975). Standing cannot be based on an interest which is held in common by all citizens of the state. See Schlesinger v. Reservists Committee To Stop the War, 418 U.S. 208, 220 (1974). For these reasons, we do not think Senator Dardenne has Article III standing.

The District Court's order dismissing Appellants' complaint is hereby affirmed.